All right, you may begin. Ms. Presiding Judge, and may it please the Court, my name is Mark Hutchison, and I represent Alaska Airlines in this matter, and I request to reserve five minutes of my argument, if that's possible. That's fine, Counsel. Just mind your own time, please. Thank you. You bet. This case involves the Railway Labor Act, a statute Congress passed to avoid any interruption in interstate commerce or the operation of an air carrier by providing for the prompt and uniform settlement of all disputes arising out of the interpretation or application of collective bargaining agreements covering rates of pay, rules, and working conditions. Such disputes can only be resolved by a system board of adjustment. In this case, we have a dispute. Whether under the Alaska— Counsel, help me on something. I was struck when I read the briefs. I didn't have any long indented quotes from the collective bargaining agreement. One argument that is made here, can be made, is that no interpretation is necessary because it's clear as a bell. And another interpretation that can be made is that you have to read some portion and interpret it. Now, I think your argument requires the latter interpretation, so show me what to read and interpret. I found the collective bargaining agreement in the excerpts here. Yes. The collective bargaining agreement, of course, has numerous provisions relating to vacations, how they're earned, how they're accrued, how they're scheduled, and when they may be used. I got them all highlighted in red and blue and everything. And, Tab, just tell me what to read and interpret. Well, you won't find anything that specifically addresses this issue in the collective bargaining agreement. But it is well understood under federal labor law that a collective bargaining agreement involves more than the words on the printed page in the collective bargaining agreement. There's a concept called the law of the shop. And the law of the shop includes interpretations, implied provisions, past practices, bargaining history, prior arbitration. I take it then you're conceding there are no words that I have to interpret. What I have to interpret is law of the shop. Yes, that's correct. Now, in terms of law of the shop, I think I understand well enough that the deal between Alaska Airlines and its employees is at the beginning of the year, you get vacation time based on seniority, you pick when you want to take your vacation, and you also get a certain amount of sick leave. Correct. So at the beginning of the year, the employee at issue was entitled to enough vacation time to cover staying home for her sick kid. Once she designated it for the Christmas holidays, I imagine the most senior people like to get the best time off. Once she designated for that, then I think what you're saying is that the law of the shop is she can't get it any earlier because everybody else has scheduled vacations and too hard to shift them around. Do I understand your argument? That's correct. In this particular case, the flight attendant… So at the moment that her kid got sick, she was not entitled at that time to any vacation time. Correctly. That's correct. Okay, now I understand the argument, I think. And that's all you need, right? That's all I need. And there's a dispute about that, which can only be resolved by the system board of adjustment. So in this case, the flight attendant in the fall of 2010 was awarded 32 days of vacation to be taken in 2011. She then went through the process of bidding for that vacation, and it was scheduled at different blocks of time. Under the contract, it can only schedule a vacation in one week blocks at a time. And what is at issue is that by the time May of 2011 came along, she had no vacation available to her. She was not entitled to any vacation in May. Well, she was. The question is when she could take it, right? She had some booked for December, and the question is whether she was entitled to take it early. But except under the collective bargaining agreement, as I understand from your earlier responses and from your briefs, there really isn't even a dispute about that. Your position is she wasn't allowed to take it early. That was your practice, right? Yes, the company policy was... That's the law of the shop. She can't take it early. She couldn't take it prior to the scheduled time in December. She had other options that she exercised. She could cash it out. She could trade it. She could use it for some other purposes, including FMLA, but FMLA is not involved here. Right. So, sir, isn't it undisputed that the law of the shop at Alaska Airlines was that she wasn't entitled to take that time early? It is not clear. The union has said for purposes of summary judgment they will not dispute the fact that that's the company's position. They very carefully refuse to agree that our position is correct. The state has not even gone that far. The problem here is whether... If the state and the union agree that in May she was not entitled, and that's the key word in the state statute, if she was not entitled to vacation in May, then the Washington Family Care Act is not implicated because it only incorporates by reference what is entitled, whatever the employee has coming from the collective bargaining agreement. Do I understand the argument that the question is two things, entitled in May, and all the state statute does is it says if you're entitled to take sick leave for yourself, you're entitled to take it for your sick child or whoever else you're taking care of. Correct. That's correct. The state statute does two things. It says if the employer has a CBA that grants an employee sick leave or other paid time off, in this case the question is vacation because she'd already used up her sick leave, then under the state law you have to... use of that entitled paid time off to care for sick family members. And it goes on to say that if the employee is entitled to use two or more types of paid time off, then the employee is permitted to choose which time off. In other words, you can't say you must use up your vacation before you can use your sick leave or vice versa. But it requires the underlying premises that it requires a choice... You can't have a choice of leave without having more than one type of leave to which you're entitled. So she'd used up her sick leave. Yes. And the only question is whether she was entitled to take vacation leave in May. Yes. When did they pick their annual calendar? January or December or what? In the fall of the prior year. Fall of prior year. Yes, sir. On this issue of whether or not we're going to look to custom and practices or as you call them, shop. That is something that an arbitrator in labor uses all the time. And I take it that you indicate that that's going to be the decisive issue here as to whether or not the CBA is to be interpreted. I don't quite understand. The state is very adamant that they don't want that to happen. But the union has taken the position in agreement with you. Is that the way you understand it? Yes. And if I was an advocate trying to avoid preemption, I would do whatever I could to avoid the existence of a disagreement, a dispute. Because unless there's a dispute about what the contract means, the Railway Labor Act doesn't preempt it. But the reality is we have a dispute. Now, there used to be years ago, I've been on the bench too long because thoughts keep coming back to me, but there used to be a time when we had companies that went over borders that we pushed pretty hard for the CBAs. Otherwise, you have a patchwork of states around. Is that still the law? And if so, is there a case that would help you in indicating that Alaska really needs to have more in order to do its business properly and effectively it needs more of a uniform process, and that's what the CBA is for? Is there a case we have that helps you on that? Yes. There are numerous cases, and they're all cited in the briefs. And one of the leading cases, of course, is Hawaiian Airlines v. Norris. Now, in that particular case, preemption didn't happen because it wasn't necessary to interpret the contract to resolve the dispute. But there are numerous cases holding sky-west. There are a lot of them in the briefs that say because airlines operate in multiple states, in our case we have flight attendants based in four different states. We fly to more than 60 cities in the United States, in the continental United States. We fly to Alaska. We fly to Hawaii. We fly to Mexico. We fly to Canada. The labor agreement involved here covers everybody. How did the district judge handle that argument? Incorrectly, Your Honor. Yes, but how? The judge accepted the argument from the state that the mere existence of the choice of leave provision in the state statute somehow gave the flight attendant an independent right to use her December vacation in May. And why was the district judge wrong on that determination? Well, because first he misinterpreted the state statute. Well, didn't he really just rule that if she has the right, it arises out of the statute and not out of the CBA? Wasn't that his ruling? It was, and it's totally incorrect. I'm just trying to, in response to Judge Wallace's question, I think that's what the district judge ruled. That's the error he made. It would be helpful for me anyway if you would respond to that. The error he made was he neglected the underpinning language in the statute that says if an employee is entitled to paid time off in a collective bargaining agreement and is entitled to more than one type of paid time off, then the employee is entitled to extend that time off to care for sick family members and has a choice. I have read the district court judge's rule to say not to opine about whether she has this right but to say that if she's got it, it doesn't arise out of the collective bargaining agreement. If she's got it, it arises out of the statute. But it can't. That's the problem on its face. Well, you're going to the merits of the statute. Yes, and I want to avoid doing that because I want to keep this in federal court and have the preemption doctrine apply. The underlying dispute is whether she is entitled to something under the contract. Yes. I think I interrupted Judge Leinfeld. I'm having trouble figuring out what Burnside means. Wolf seems a lot easier to ground and interpret. All that opt-in and opt-out stuff. Yes. Okay, that's very good. And an opt-in. Tell me how those two cases work in this case. In this case, we have what's called an opt-in statute. There is no state right to anything unless the collective bargaining agreement provides it. That means the statute doesn't say employers have to give any kind of leave. It says if there's an entitlement to leave for themselves, they can use it for their independence. Correct, and an opt-out statute simply says if the collective bargaining agreement waives a state law right, it opts out of the state law, then it doesn't apply. So if you could write the paragraph applying Burnside and Wolf to this case, why don't you say what that paragraph would say? So there are two prongs in Burnside. The first prong is whether the statutory right in question is an independent statute. Whether the statute's rights is totally independent from whatever the contract says. In other words, they're not joined together. And if the issue in question is totally dependent on the contract, then there's preemption. If it's not, then there's no preemption. The second prong says, yeah, if it's a hybrid case like we have here, there's both a statutory right. There is a piece of the Washington Family Care Act that is a non-negotiable independent statutory right, namely the extension of leave you have under the contract plus the choice of leave provision. When you say extension, that was what I started to ask a question about before. I don't understand the word extension. Extension, I would think, would ordinarily mean extending the leave. So if you're entitled to three days but you're sick for five. But as I understand the Washington statute, it doesn't extend anything. All it does is it says if you're entitled to sick leave for yourself, it doesn't mean you have to bring in a note from your doctor saying he's taken care of you. He may be taking care of your kid. That's what I – maybe I should have said expand the right. It expands it to not only self-use but for sick family member use. It's sort of like an omnibus clause in an auto liability policy, other permitted drivers. Yes, exactly. Your Honor, I've only got a minute. Can I stop for now? Yes, you may. It's your time. Thank you. Sure. We'll hear from the opposing party. May it please the Court. My name is James Mills, Assistant Attorney General representing the Washington State Department of Labor and Industries. I'm going to reserve five minutes for counsel from AFA. This case essentially boils down to the state law question of whether the Washington Family Care Act precludes a collective bargaining agreement for mandating that all vacation leave be scheduled in advance. Wait a minute. You already know my question because you've been formulating your answer to it while your adversary spoke. I thought that what the act did was not create a right to take leave, to take care of a sick dependent. Instead, as I read it, it said if you're entitled to leave for yourself, you can use it for your sick dependent. That way, even if the employee is just fine, they can still take sick leave or annual leave or whatever kind of leave they want. Why am I reading it wrong? The first part to clarify is the yourself part. Actually, the way that the statute operates is in 270, there is a right to choice of leave for any and all leave. That's not just whether or not you have two types of leave. It's whether you have any type . . . Any kind of leave will do, sure. Any type of leave that falls under the statutory definition. The annual leave, though, that's sort of easy. If I'm entitled to take three days of vacation and I want to use my vacation to take care of my sick kid, I don't need a doctor's note from anyone. Well, under the statute, that's correct. What you need on the statutory . . . I could do that without the statute. Well, without the statute, you couldn't. You'd have to schedule in advance. Scheduling is the issue. Now, it boils down, as I understand it, to what the word entitled means. I can perfectly well understand that you could be entitled, in the fall of 2014, to . . . I don't know how many. I can't remember how many days they get. Say 10 days of vacation leave. As of that time, you could schedule it for whenever you liked in 2015. But then once you scheduled it, not be entitled to take the leave at some different time because the airline has an interest not only in getting a certain number of days of work out of its employees, but an interest as well in having the requisite number of employees available on each day. You're absolutely correct that it is a question of whether they're entitled to the leave, but that's an interpretation of the statute. Once you've scheduled in the fall of . . . This is hypothetical, you understand. Once they've passed out the sheets to everybody saying you have so many days of vacation leave coming, fill in the blanks below for when you'd like to take it, and you do that, why are you then entitled to take your leave at a different time of year? Because of the plain language of the statute that requires that an employee who . . . Okay, which words? I've got it right here. Okay, looking at the last sentence of the first paragraph in Section 1, it says that an employee taking leave under the circumstances described in this section must comply with the terms of a collective bar agreement or employer policy applicable to leave except for any terms relating to the choice of leave. Read with the first . . . Does that help you? Because it excludes any advanced scheduling requirement that precludes a worker with the language that says that it does not require them to follow the terms of the collective bargain agreement with the word except. What does except for the terms relating to the choice of leave mean? It refers back up to the first sentence of Subsection 1 that states that an employee must be able to use any or all of the employee's choice of leave or other paid time off to care for a sick child. So the terms relating to the choice of leave mean the distinction between annual leave and sick leave, and the legislature is saying we don't care what kind of leave it is. If the employee is entitled to it, they can take it to care for a dependent. Correct, regardless of whether there is an advanced scheduling . . . But why does it . . . that's what I don't get. Once you start the regardless part of your sentence, regardless of any advanced scheduling, once you've scheduled your leave for the Christmas holidays, I don't understand how you're entitled to take it in May. Essentially, all employees are required to schedule their vacation leave ahead of time. So if there were no . . . If you're trying to run a business that requires the employees to be there, you're going to not let . . . I mean, it might be everybody would like their leave to be during the Christmas holidays so they can visit their family. I would think that would be the choice time. Right, the question, though, here is . . . But there are people that fly around during the Christmas holidays. So the legislature, though, has made a specific decision to establish an amendment standard that provides this minimum benefit for workers. But where does it say that in this statute? Where does it say that you're entitled to take leave at a time other than when it was scheduled? If you don't . . . If you read except for any terms relating to the choice of leave with the first provision, the only way to make the statute have any meaning is to recognize that advanced scheduling cannot pull out an entire class of leave. Why wouldn't it have meaning if it meant that regardless of the terms saying you can only use sick leave for your own illness, under our command, our legislative command, you're also entitled to use sick leave for your kid's illness? So going back to 265, if I'm entitled to take Wednesday, Thursday, and Friday off because you got sick and that's your only contractual entitlement, then we, the legislature, say you can also take Wednesday, Thursday, and Friday off because your kid got sick. Why doesn't that give meaning to the statute? Because there would be no opportunity to take the sick leave on an emergence basis, which is clearly the purpose of the statute. Clearly, it's always . . . No, I understand. . . . a question in my mind rather than an answer. Where is it clear? If you go to 265, it describes when sick leave or other paid time off is defined and essentially describes it as under the terms of the collective bargaining agreement or employee policy, illness or vacation, or personal holiday. Whenever it falls under that statutory definition, it then is required by the choice of leave provision to be available for purposes that are defined under the Act. This brings us back to the larger point, though, which is we're spending most of our argument here discussing the statutory interpretation. The role of this court is to determine the preemption question. But if in making the interpretation it's required to go to the CBA, then you lose on the preemption document. It isn't just an interpretative statute. Does the statute require some interpretation of the CBA? And I think Justice Kleinfeld has made the point, and I think it's persuasive that the statute itself requires certain terms to be determined by the CBA. And if so, then there's a presumption. The district court says it doesn't make any difference, but I don't see that it doesn't make. I'm not persuaded the district court was right on that. Maybe you can help me with that. Certainly. Well, first point to that, AFA and Alaska do not dispute what is in the collective bargaining agreement. It's undisputed that Ms. Mazarin cannot take leave under the collective bargaining agreement except for following those scheduled requirements. So she couldn't take it in May. Under the CBA. Right. That doesn't go to the question of whether the statute itself requires it regardless of the CBA. Yes, counsel, I understand that. Certainly. But you're getting at, and I hope we won't be dissuaded by getting at, because this is the question that's clearly bothering all three of us. They're trying to run an airline, so even though the statute says that they can't take leave until it's earned, it's banked so they can schedule because people have to schedule because they're trying to run an airline, right? Right. And so she scheduled her time in December, and then we get into this notion of, of course, you haven't gotten around to it yet, but Alaska Airlines' position is that there is a prerequisite here, and the prerequisite is that she has to be entitled to the leave. She has to have the leave. The statute just says they can't. Right. She has a choice of which leave she's going to use. Right. But it does get to be very circular, and I share Judge Wallace's question, right? It gets to be very circular. It does, but both arguments get to be very circular. But the point is here that the Washington Family Care Act provides a minimum standard, and if any scheduling could prevent that minimum standard from being in place, it wouldn't be the whole purpose of the statute would be undermined. Yes, but it's not any employer. I mean, I think going back to Judge Wallace's very first question is we're talking about the RLA here, and there's really very important policy reasons that when we're talking about it. In the transportation industry, they have unique demands. What do we do about that? Well, that's not implicated here because we're not talking about the interpretation of specific terms of the collective bargaining agreement. The whole purpose of the RLA is that so there is uniform interpretation of specific terms in the collective bargaining agreement, and there's no disagreement there on the specific terms in the agreement. What about opposing counsel's argument that what he's got to contend with is a calculated, perhaps very crafty agreement, that for purposes of summary judgment, there isn't a dispute under the collective bargaining agreement, that she couldn't use the time in May? But the briefs are very careful to say that's for purposes of summary judgment. It's pretty clear from the record itself that there was no, that before the time at which Ms. Masserant requested it, Alaska had a practice of not allowing it. So the collective bargaining agreement doesn't speak to this at all, right? That's correct. Okay, and so now we're talking about law of the shop. Just to make sure we're staying up with you, you're talking about law of the shop or the practice that Alaska Airlines did not permit her to do this. That's correct. So does that mean when you say in your briefs carefully that there isn't a dispute about that, you're just saying you agree that's been the practice? That's right. But I think the main point, again, is that it doesn't matter what the past practice is because the state preempts the substantive law here on whether or not they can have this advanced scheduling requirement. Well, that's your merits argument. Right, and that's the very point that raises the question of why we're here in federal court versus being in the state forum where this belongs. Thank you. Good morning, Your Honors. Kathy Bernard for AFA, and I'd like to get right to the question about the past practice. The facts are that there has never been a flight attendant allowed to take vacation to care for a dependent when it wasn't scheduled. Wait a minute. If she had sick leave available to her, there's no question she could take leave. Right, but I'm talking about vacation pay. Yeah, I'm talking about vacation. And what I want to try to help the court focus a little bit is when you look at the statute, the state statute, and it says entitled, I understand there's a couple concerns here. One is the RLA is there to protect interstate commerce and there needs to be uniformity. So I want to say to you, Judge Wallace, and the rest of the panel, that this CBA actually incorporates . . . or it doesn't incorporate, but it says it creates a contractual right of all flight attendants to the leave that's under their own domicile state. So the CBA gives away that uniformity argument. I'd like to look at them. Could you tell me where they are? I didn't anticipate that particular question, so I didn't make a note about where that is. You said the CBA gives away uniformity. Do you mean that Alaska Airlines has conceded that they'll calculate this four different ways? Yes. Where? Your Honor, I didn't anticipate that question, so I didn't make a note of where it is in the CBA, but that provision is there. I don't have it with me and I have two minutes. Perhaps counsel could look for it. Also, when we're looking at whether they're entitled under the state statute, and I understand the concern that we have to interpret the collective bargaining agreement in a way that would implicate preemption. That's the concern I heard from the panel. But if you look at Section 14 of the CBA, it says directly as of December 31st, each year a flight attendant who has one calendar year or more of employment will be entitled to 14 days of vacation. And the briefing presents the court, and I can list them now if you like, the record sites where Alaska concedes that that is how flight attendants deal the law of the shop really doesn't matter. I mean, it's sort of hard for me. We usually fly out on Christmas and get the whole family together, and so does everybody else in the world. The airline terminals are just mobbed. Are you saying anybody who has enough leave accumulated, a senior employee, can just dance off on Christmas and leave everybody there in a terminal? Even if they didn't have it scheduled? Yes, and that was the decision the state legislature made. And I understand that is the decision the state legislature made. Well, where? Show me the words. In the statute itself where it says you're entitled to take any leave that you have to care for a child or a dependent, and you don't have to comply with the terms of the collective bargaining agreement with regard to the  Well, you're entitled to your leave at a dead time. I don't know when a dead time is. Maybe the week before spring break is a dead time. Well, Your Honor, you may disagree with the Washington legislature. And again, I don't agree. They get to make the laws for the state of Washington. It doesn't matter if we agree with it or not. The only question that I'm raising is where are the words that do what you want? Where it says you don't have to comply with the terms of the collective bargaining agreement with regard to choice of leave. So you're relying on except for any terms relating to the choice of leave? Right. What does choice mean there? Whether you use vacation or sick or annual or whatever you have. And I think that Judge Christin was right when the district court said, I don't know if this is the right interpretation of the statute, but it arises out of a state statute. And trying to interpret it is that's a province of the state court system, not this court. And I understand it's the province of this court if they have to interpret the collective bargaining agreement to find preemption. But you don't have to interpret the collective bargaining agreement. It's clear as a bell. You're over your time. Do you agree that if the issue is what shop practice is, that is over the years what the employer and employee have determined they're working issues out that way, that if the case turns on shop practice, it would have to be determined under the CBA, right? The state court isn't in a position to tell us what shop practice is. No, it isn't. But I don't agree that it would be determinative, and this is why, Your Honor. Well, let's assume for the sake of argument that we have to go to shop practice to make a determination as to where this dispute should be determined, not the outcome, but where. I don't believe it's determinative. I'll tell you why. It's a non-negotiable state right. So if the parties came to a past practice by the way past practice comes about, longstanding acquiescence by the union in that, it still would not trump the state right, which is your choice to use leave without regard to that scheduling practice. Your position is that even if the adjudicator has to look at shop practice, that isn't sufficient for preemption. Not when the shop practice is undisputed as it is, and that was not a coy move on my part that was acknowledging the fact. So where it's undisputed, and let's pretend the collective bargaining agreement had a provision that was explicit and said you may not use your vacation to care for a person when it's scheduled for vacation. If it said that explicitly, it would still fall. No, but that's not the point. The point is that if you have to go to shop practice, you can't even of, you have to first determine if that's an issue. The district court circumvented that, and I'm not sure that the district court could do so. Well, I understand that, but I agree with the district court that where the shop practice is undisputed, even if it's in conflict with the state statute, which is the minimum standard, then the state statute prevails. And the district court can make the determination of what the shop practice is? It was undisputed on the record, Your Honor. Oh, it wasn't undisputed. The state opposed the shop practice. You agreed, you didn't disagree. The state is not a party to the collective bargaining agreement. The flight attendants are, and the flight attendants in Alaska have an undisputed past practice. Okay. I see your point. Thank you. You're out of time. Thank you, counsel. Thank you. What the lower court did was read out of the statute both the entitlement requirement under the CBA and the requirement that the employee comply with the CBA. The statute on its face says that employees entitled must comply with the requirements of the leave in question. The state has issued a FAQ that says that provisions of the collective bargaining agreement or employer policies concerning the use of leave, such as advanced scheduling of vacation, may still be applied. In this case, assume you have a retailer who has a policy that says no vacations will be taken by our employees during the busy holiday season. Does that mean that if an employee's child got sick, that employee would have the ability to use vacation to care for that sick child? The answer is no. Doesn't that go to merits? It does, but if there's a question about whether the employee was entitled to it at all, there's nothing that says. That's why you view it as a prerequisite. Yes, it's a prerequisite. Same with an accounting firm that says no vacations during the busy tax season. In this case, the state itself has issued administrative guidance that during the first six months of a probationary employee's employment, the employee cannot use accrued vacation because they're not entitled to it. What you're saying is that in addition to the fact that she's not entitled to vacation in May, when she designated vacation in December, and that's the entitled word, this phrase must comply in the last sentence of 49-12-271, says the must comply language means she has to take it when she's scheduled to as well. Right. But if she has more than two choices of paid leave, then she can choose. But in this case, she did not, but the bottom line important point here is we need to have uniform resolution of these disputes from Anchorage to Orlando. Before you leave that point, opposing counsel said that the collective bargaining agreement gave that away and that Alaska has taken the position there that it will separately calculate these for each state. That is totally incorrect. There's some language in the collective bargaining agreement and a side letter that says for purposes of definition of family members for use of sick leave, nothing to do with vacations. I don't suppose you could cite me to that part of the CBA. The sick leave portion and I could. Is that where I look? Yes. That's fine. If it's the sick leave portion, I'll go look there. That's where it's going to tell me that in the sick leave portion and in a side letter at the end of the contract. And I can give you the precise page. Okay. Would you like that? Sure. Okay. Thank you.  Thank you.  Thank you. Thank you. It is at the appendix of the appellant's brief page. ER. Well, no, it's in the record at ER one, one eight, zero. Thank you. Counsel. Thank you. All counsel. Thank you. On this case.
judges: Wallace, Kleinfeld, Christen